IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

ANDREA TURNER on behalf of herself
and all others similarly situated                    PLAINTIFF

v.                          CIVIL ACTION NO.: 5:23-cv-00074-DCB-BWR

ALFORD, HOLLOWAY, & SMITH, PLLC                      DEFENDANT

MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Alford, Holloway, & Smith,
PLLC ("Defendant")'s renewed motion to dismiss for lack of
subject-matter jurisdiction under Federal Rule of Civil
Procedure 12(b)(1) and (h)(3). [ECF No. 47]. This matter arose
from an unauthorized third-party cyberattack on Defendant's
computer network at its business, an accounting firm in McComb,
Mississippi. [ECF No. 21]. Plaintiff Andrea Turner
("Plaintiff") asserts her class action lawsuit for negligence
and for a declaratory judgment based on Defendant's alleged
failure to properly secure and safeguard personal identifiable
information. Id. ¶¶ 1, 86-124. Plaintiff seeks to certify a
class of persons "actually compromised or potentially
compromised in the data breach." Id. ¶ 71. Plaintiff argues
that the Court has subject-matter and diversity jurisdiction of
this action under 28 U.S.C. § 1332(d), which codifies certain

1

jurisdictional provisions of the Class Action Fairness Act
("CAFA"), Pub.L. 109-2, 119 Stat. 9 (2005).  [ECF No. 21] ¶ 21.
Defendant previously filed a motion to dismiss for lack of
subject-matter jurisdiction [ECF No. 24] on the grounds that an
exception to CAFA known as the "home state exception" applies
under 28 U.S.C. § 1332(d)(4)(B).[1]  Plaintiff opposed the motion
and argued that Defendant's evidence was insufficient to carry
its burden of proving the domicile of putative class members.
[ECF No. 29] at 1-5.  Noting that both sides had made some valid

---

[1] The home state exception to CAFA in Section 1332(d)(4)(B)
provides:

(4) A district court **shall decline** to exercise jurisdiction
under paragraph (2) [over a class action in which] -—

(B) two-thirds or more of the members of all proposed plaintiff
classes in the aggregate, and the primary defendants, are
citizens of the State in which the action was originally filed.

28 U.S.C. § 1332(d)(4)(B) (emphasis added).

The statute contains a companion mandatory jurisdictional
exception known as the "local controversy" exception. 28 U.S.C.
§ 1332(d)(4)(A). Both the home state exception and the local
controversy exception to CAFA are mandatory abstention
provisions that are "'designed to draw a delicate balance
between making a federal forum available to genuinely national
litigation and allowing the state courts to retain cases when
the controversy is strongly linked to that state.'" Hollinger v.
Home State Mut. Ins. Co., 654 F.3d 564, 570 (5th Cir. 2011)
(quoting Hart v. FedEx Ground Package Sys. Inc., 457 F.3d 675,
682 (7th Cir. 2006)).

points, the Court dismissed Defendant's motion without prejudice
and gave the parties the opportunity to conduct limited
jurisdictional discovery for a period of not more than sixty
(60) days.  [ECF No. 31] at 7-9; Turner v. Alford, Holloway, &
Smith, PLLC, No. 5:23-CV-00074-DCB-BWR, 2024 WL 2978471, at *3
(S.D. Miss. June 13, 2024).  The Court further ordered that, at
the end of the parties' jurisdictional discovery, Defendant
would be permitted to re-urge its motion to dismiss, which
Defendant has chosen to do with the pending motion.

Jurisdictional discovery ended on August 12, 2024.  Having
reviewed and considered the parties' submissions and applicable
law, the Court now finds that dismissal for lack of subject-
matter jurisdiction under the home state exception is warranted.

### Standard of Review on Rule 12(b)(1) Motion To Dismiss

Under Federal Rule of Civil Procedure 12(b)(1), a party may
challenge by motion the subject-matter jurisdiction of the
district court to hear a case.  Fed. R. Civ. P. 12(b)(1).  "The
district court ... has the power to dismiss for lack of subject
matter jurisdiction on any one of three separate bases: (1) the
complaint alone; (2) the complaint supplemented by undisputed
facts evidenced in the record; or (3) the complaint supplemented
by undisputed facts plus the court's resolution of disputed
facts."  Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir.),

cert. denied, 454 U.S. 897 (1981)); accord, e.g., Ramming v.
United States, 281 F.3d 158, 161 (5th Cir. 2001); Barrera-
Montenegro v. United States, 74 F.3d 657, 659 (5th Cir. 1996);
Voluntary Purchasing Groups, Inc. v. Reilly, 889 F.2d 1380, 1384
(5th Cir. 1989).  The initial jurisdictional burden of proof is
on Plaintiff to demonstrate that jurisdiction exists.  Ramming,
281 F.3d at 161 (relying on Menchaca v. Chrysler Credit Corp.,
613 F.2d 507, 511 (5th Cir. 1980)).  Because Defendant is making
a "factual-attack" on the Court's subject-matter jurisdiction in
its Rule 12(b)(1) motion, the Court may consider evidence
outside the complaint in its ruling.  Williamson, 645 F.2d at
412-14 ("[T]he district court is not limited to an inquiry into
undisputed facts. It may hear conflicting written and oral
evidence and decide for itself the factual issues which
determine jurisdiction."); see also Stewart v. Entergy Corp., 35
F.4th 930, 934 (5th Cir. 2022) (it was not clear error for
district court to rely on an informal survey in reaching its
conclusion that the home state exception to CAFA jurisdiction
applied).

## Discussion and Legal Analysis

As discussed in detail in the prior order, [ECF No. 31],
Defendant asserts that the Court must decline from exercising
jurisdiction over this case because the "home state exception"
to CAFA under 28 U.S.C. § 1332(d)(4)(B) applies and requires

4

mandatory abstention.  [ECF No. 47] at 1; <u>see</u> <u>Hollinger</u>, 654
F.3d at 570 ("… the home state mandatory abstention provision
prevents a federal district court from exercising subject matter
jurisdiction … .").  Defendant concedes that, as the party
objecting to CAFA jurisdiction, the jurisdictional burden of
proof has shifted to Defendant.  [ECF No. 48] at 5.[2]  To defeat
CAFA jurisdiction, Defendant must show by a preponderance of the
evidence that "two-thirds or more of the members of all proposed
plaintiff classes in the aggregate, and the primary defendants,
are citizens of the State in which the action was originally
filed."  28 U.S.C. § 1332(d)(4); <u>see</u> <u>Stewart v. Entergy Corp.</u>,
35 F.4th 930, 932, n.1 (5th Cir. 2022); <u>Arbuckle Mountain Ranch</u>
<u>of Texas, Inc. v. Chesapeake Energy Corp.</u>, 810 F.3d 335, 338
(5th Cir. 2016) (the applicability of a CAFA exception must be
shown with reasonable certainty); <u>Hollinger</u>, 654 F.3d at 571
(the CAFA "mandatory abstention provisions require proof, by a

---

[2] The Fifth Circuit explained in <u>Hollinger</u>, 654 F.3d at 571, that
"the party objecting to CAFA jurisdiction must prove that the
CAFA exceptions to federal jurisdiction divests the district
court of subject matter jurisdiction."  Like the procedural
posture in <u>Hollinger</u>, Plaintiff initially filed this case in
federal court, so there is no pending motion to remand to state
court as in <u>Preston v. Tenet Healthsystem Meml. Med. Ctr., Inc.</u>,
485 F.3d 804 (5th Cir. 2007) ("<u>Preston II</u>"), and many other
cases that address CAFA exceptions.

preponderance of the evidence, that two-thirds or more of the members of the proposed class are citizens of the state where the action is filed … .").

State citizenship for diversity purposes is controlled by federal, not state, law.  Mas v. Perry, 489 F.2d 1396, 1399 (5th Cir.), cert. denied, 419 U.S. 842 (1974), (relying on 1 J. Moore, Moore's Federal Practice P0.74(1), at 707.1 (1972)).  To be a citizen of a State under Section 1332, "a natural person must be both a citizen of the United States … and a domiciliary of that State."  Mas, 489 F.2d at 1399  (citations omitted). "For adults, domicile is established by physical presence in a place in connection with a certain state of mind concerning one's intent to remain there."  Mississippi Band of Choctaw Indians v. Holyfield, 490 U.S. 30, 48 (1989); accord Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc., 485 F.3d 793, 799 (5th Cir. 2007) ("Preston I") ("Domicile requires residence in the state and an intent to remain in the state.").  Although mere residence in the state is not enough to prove domicile, the place of residence is prima facie evidence of the domicile. Hollinger, 654 F.3d at 571 (citations omitted); Mas, 489 F.2d at 1399; Stine v. Moore, 213 F.2d 446, 448 (5th Cir. 1954); Mississippi Farm Bureau Cas. Ins. Co. v. Bell, 275 F. Supp.3d 790, 793 (S.D. Miss. 2017).  "There is a presumption in favor of

[a person's] continuing domicile which requires the party
seeking to show a change in domicile to come forward with enough
evidence to that effect... ." <u>Coury v. Prot</u>, 85 F.3d 244, 250
(5th Cir. 1996); <u>Preston v. Tenet Healthsystem Meml. Med. Ctr.,
Inc.</u>, 485 F.3d 804, 819 (5th Cir. 2007) ("<u>Preston II</u>")
(upholding presumption of continuing domicile); <u>Caruso v.
Allstate Ins. Co.</u>, 469 F. Supp. 2d 364, 368 (E.D. La. 2007)
(detailed proof was not necessary where common-sense presumption
of continuing domicile prevailed in determining the two-thirds
citizenship requirement for CAFA exception).

(a). <u>Defendant's Jurisdictional Proof</u>.

     Defendant describes itself as a small accounting firm in
McComb, Mississippi, that provides accounting and tax services
to its clients.  Declaration of Andrew Grice, [ECF No. 47-1] ¶
3.  Over 92% of Defendant's clients are located in Mississippi.
<u>Id.</u>  Defendant is a Mississippi limited liability company, and
each of its members is a citizen of, and domiciled in,
Mississippi.  <u>Id.</u> ¶¶ 4-5.

     As set forth in the Amended Complaint, on or about July 17,
2023, Defendant sent Plaintiff and the other potential class
members written notice of an incident that may have involved
their personal information.  [ECF No. 21] ¶ 28; <u>see also</u> [ECF
No. 47-1] ¶ 11.  Plaintiff filed this lawsuit a few weeks later

on August 9, 2023.  According to Defendant, addresses used for the notices that it mailed to Plaintiff and the putative class members were derived from tax and employment information in Defendant's records.  [ECF No. 30] at 4; [ECF No. 54] at 8-9; [ECF No. 21] ¶ 25.  Defendant argues that employment-related records are particularly probative of domicile and that, under Fifth Circuit precedent, employment is a factor that courts can use to establish domicile and intent to remain.  [ECF No. 30] at 3-4; [ECF No. 54] at 8-9; Coury, 85 F.3d at 251 (factors that indicate a litigant's intention to establish domicile "may include the places where the litigant exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family.").

Through counsel, Defendant retained a third-party administrator to facilitate the mailing of the notices.  [ECF No. 47-1] ¶ 10.  Prior to mailing the notices, the third-party administrator ran the addresses through the National Change of Address database, a set of data that includes the permanent change-of-address records maintained by the U.S. Postal Service. Id.; see Monaghan v. Adkins, 117 F. App'x 923, 925-26 (5th Cir. 2004)(evidence that mailing addresses were confirmed by participation in the National Change of Address program

sponsored by the United States Postal Service established
presumption of delivery under Mississippi law); <u>Kemp v. Tower
Loan of Mississippi, LLC</u>, No. 3:15-CV-499-CWR-LRA, 2017 WL
6522323, at *4 (S.D. Miss. Dec. 20, 2017) (where settlement
administrator ran mailing addresses through the National Change
of Address Database the court found notice to be the best
practicable under the circumstances).

Based on information gathered from its notice mailing
process, Defendant represents to the Court that:

> (i) of the total possible members of a class as
> alleged in the class definition found in the Amended
> Class Action Complaint, eighty-seven percent (87%)
> have Mississippi addresses;
>
> (ii) 87% of all the notice letters were mailed to
> persons domiciled in Mississippi;
>
> (iii) some of the letters mailed to Mississippi
> addresses were returned as undeliverable;
>
> (iv) letters successfully mailed to persons within
> the putative class as alleged in the Amended Class
> Action Complaint with mailing addresses and domiciles
> in the State of Mississippi constituted sixty-nine
> percent (69%) of the total proposed class.

[ECF 47-1] ¶ 12]; [ECF No. 48] at 2.

In support of these representations, Defendant has
submitted the following documentary evidence:

1. A sworn Declaration of Andrew Grice dated October 23,
2023, in which he attests to the procedure used, and the results
of, Defendant's mailing of data breach notices to alleged class

members on or around June 27, 2023.  Mr. Grice states that he is a certified public accountant with Defendant and was involved in compiling address information for Defendant's mailing of notices to alleged class members.  [ECF No. 24-1].

2.  A second sworn Declaration of Andrew Grice dated August 26, 2024, in which he attests, among other things, to the procedures used by Defendant to check mailing addresses for potential class members with the National Change of Address database prior to the mailing of the data breach notices. [ECF No. 47-1].  Mr. Grice further attests that over 80% of the names and mailing addresses were cleared or updated through the National Change of Address database.  Id. ¶ 13.  Attached to the second Declaration are confidential spreadsheets (filed separately under seal pursuant to the Court's protective order, [ECF No. 50]), which contain redacted[3] personal information for persons in the proposed class, the dates when Defendant obtained an address for each such person, and a list of potential class members for whom addresses are missing.  Restricted documents, [ECF Nos. 52, 52-1].

---

[3]Defendant redacted the personal identifying information on the spreadsheets to include only the potential class members' first names, states and zip codes.  Plaintiff objects to these redactions as discussed below in paragraph (b) of this Memorandum Opinion, "Plaintiff's Response in Opposition."

3.  A third sworn Declaration of Andrew Grice dated
September 15, 2024, in which he attests that the third-party
administrator retained by Defendant accounted for duplicate
names on Defendant's mailing list before notices were mailed.
Mr. Grice explained that duplicate names arose from situations
where an individual worked for more than one of Defendant's
clients.  Separate notifications were sent on behalf of each data
owner to ensure a comprehensive notice process.  [ECF No. 54-1]
¶¶ 3-6.

4.  Plaintiff's discovery responses to Defendant's First Set
of Requests for Production and to Defendant's First Set Of
Interrogatories [ECF No. 47-2].[4]

---

[4]Defendant propounded six requests for production of documents to
Plaintiff, the first of which, with Plaintiff's response, was:

  REQUEST FOR PRODUCTION NO. 1: Produce all documents
  related to or that support your contention that not more
  than two-thirds of the members of the putative class
  alleged in the Amended Complaint are citizens of
  Mississippi.

  RESPONSE TO REQUEST FOR PRODUCTION NO. 1: The spreadsheet
  that Defendant produced on July 15, 2024. The sample data
  breach notice that Defendant filed with the State of
  Vermont.

[ECF No. 47-2] at 3.  The "data breach notice that Defendant
filed with the State of Vermont" that is referenced in response
to Request for Production No. 1 also is referenced in
Plaintiff's response to Interrogatory No. 6.  [ECF No. 47-2] at
17.  However, Plaintiff makes no mention of a Vermont data
breach notice in her subsequent Response in Opposition to the
Renewed Motion to Dismiss [ECF No. 53], and she has presented no

5.  U.S. Census Bureau 2019 Geographical Mobility Data [ECF No. 47-3].

6.  U.S. Census Bureau 2021 Geographical Mobility Data [ECF No 47-4].

7.  U.S. Census Bureau 2022 Geographical Mobility Data [ECF No. 47-5].

With respect to the United Census Bureau Mobility Data that Defendant submitted in support of its citizenship arguments, Defendant claims:

> The latest census data from the U.S. Census Bureau shows that, in 2022, there were 2,907,327 citizens in Mississippi and, out of that number, 2,584,891 (around 89%) of those individuals were in the same house one year ago. (*See* Mot. at Ex. E.) [footnote omitted]. If the number of individuals who moved to a different residence within the state is added to the equation, the percentage increases to 97%. (*Id*.) This percentage was the same for years 2021 and 2019. (*Id*. at Exs. C-D.) There is no reason to believe that the number of individuals maintaining citizenship in Mississippi has substantially changed.

[ECF No. 48] at 7.  United States census data is a recognized subject of judicial notice and has been used by federal courts in CAFA analyses.  Hollinger, 654 F.3d at 571–72 (mentioning Bennett v. Board of Commissioners for East Jefferson Levee District, 2007 WL 2571942, *4–5 (E.D. La. 2007), for its use of United

---

such evidence to the Court.  This argument is therefore deemed abandoned and waived.

States Census Bureau data in CAFA analysis).  In her opposition, [ECF No. 53], Plaintiff makes no mention of the United States Census Bureau data that Defendant submitted and offers nothing to explain or rebut the statistics.  The Census Bureau mobility evidence therefore stands uncontroverted and shows, over a relevant three-year period, a low percentage of Mississippians who have changed their Mississippi domicile to a different state.  Factually, this case presents a stable environment that is the opposite of the natural disaster aftermath, mass exodus, and uncertainty regarding intent to remain or relocate that the Fifth Circuit and federal district courts faced in Preston I, Preston II, and other post-catastrophe lawsuits.

(b).  Plaintiff's Response in Opposition.

    Plaintiff repeats the general attacks on the sufficiency of Defendant's jurisdictional evidence that she made in response to the first motion to dismiss, and she argues that more is needed to determine "where potential class members reside and/or intend to reside … ."  [ECF No. 53] at 3.  Citing a Texas district court, Evans v. Enter. Prods. Partners, LP, 426 F. Supp. 3d 397 (S.D. Tex. 2019), Plaintiff suggests that a random sampling of persons on Defendant's list of names is needed.  [ECF No. 53] at 4-5; Evans, 426 F. Supp. 3d at 405-06 (court found randomly generated 5% sample of property owner list that was then matched

13

with Texas driver license information to be "[m]ore specific and
compelling" proof of Texas residency than mailing addresses
alone). Plaintiff does not provide specifics of the type and
extent of random sampling that she believes to be necessary in
this case. Plaintiff blames her lack of information on
Defendant's alleged failure to cooperate during the court-
ordered jurisdictional discovery period, even though Plaintiff
never made the Court aware of any such problem before discovery
closed. Plaintiff now complains that Defendant refused to
produce: "Records sufficient to disclose, for each Impacted
Person,[footnote omitted] such Impacted Person's first name and
last name and each address, phone number, and email address for
such Impacted Person." [ECF No. 53] at 4; [ECF No. 53-1] at 5.
Plaintiff argues that this information was "necessary for any
random sampling." [ECF No. 53] at 4. She claims that, despite
her counsel's attempts to resolve objections in a meeting with
defense counsel, Defendant refused to produce anything other
than the first name, state, and zip code of persons on its
mailing list. Id. at 4-5. During discovery, Plaintiff sought
no judicial resolution of the disputes described in her
opposition memorandum, and she offers no explanation for failing
to contact the Court for assistance during or immediately after
the deadlocked discovery meeting. Yet she now charges that
Defendant blocked discovery of "readily available information

14

that would have allowed the most accurate determination of where

potential class members reside and/or intend to reside ... ."

She asserts that "Defendant should not be permitted to prevail

... by circumscribing the scope of available evidence ... ."

Id. at 5.

In reply, Defendant (i) challenges as untimely Plaintiff's

discovery complaints, [ECF No. 54] at 5; (ii) argues that it has

produced more than sufficient information for Plaintiff and the

Court to determine the citizenship of the class, which Plaintiff

has failed to rebut, id. at 3-6; and (iii) questions the

seriousness of Plaintiff's need for the full names, mailing

addresses, phone numbers and email addresses of all persons on

Defendant's mailing list to conduct any type of random sampling,

id. at 7.  Citing the terms of the Court's protective order

regarding the confidentiality of discovery materials, Defendant

notes that the parties cannot contact persons on the mailing

list without the prior agreement and consent of the Court,[5] which

---

[5] The Court's protective order enforces the terms and conditions
of the Joint Motion, [ECF No. 36], including paragraph 7, which
provides:

> 7.  Basic Principles. Confidential Discovery Material,
> information derived therefrom or any other documents
> or materials reflecting or disclosing any Confidential
> Material may only be used for jurisdictional discovery
> in this litigation and shall not be used for any other
> purpose. Plaintiff and Defendant may not contact or
> communicate in writing, orally, or otherwise, any
> individuals identified in documents produced or

Plaintiff never sought. <u>See</u> Joint Motion for Protective Order &
Joint Stipulation Regarding Confidentiality of Discovery
Materials, [ECF No. 36] ¶ 7; Order Granting Joint Motion for
Protective Order, [ECF No. 42].

Plaintiff raises a second discovery issue related to
Defendant's objection to producing anything other than the first
name, state, and zip code of persons on its mailing list. [ECF
No. 53] at 6. Plaintiff complains that, because the list is
redacted, she cannot determine to what extent the mailing list
includes definite or likely duplicate names, which renders the
list unreliable. <u>Id.</u> at 6. In reply, Defendant explains that
its third-party administrator eliminated duplicate names on the
list prior to mailing the notices to potential class members.
[ECF No. 54] at 2-3; Supplemental Declaration of Andrew Grice,
[ECF No. 54-1]. Mr. Grice declared under oath that the third-
party administrator "de-duplicated" names on the mailing list
prior to mailing notices to potential class members. It appears
to the Court that this is a misunderstanding, which could have
been resolved before discovery closed.

_____

        discovery responses for purposes of the litigation
        without the prior agreement and consent of the Court.

Joint Motion for Protective Order, [ECF No. 36] ¶ 7; Order
Granting Joint Motion for Protective Order, [ECF No. 42].

Plaintiff's opposition memorandum marks the first time that the Court has heard of any discovery disputes in this matter. Under the Local Uniform Civil Rules of the United States District Courts for the Northern District and the Southern District of Mississippi, "[a] party must file a discovery motion sufficiently in advance of the discovery deadline to allow response to the motion, ruling by the court, and time to effectuate the court's order before the discovery deadline." L.U. Civ. R. 7(b)(2)(C).  The discovery deadline was August 12, 2024.  At no time during discovery did Plaintiff file a motion to compel under Federal Rule of Civil Procedure 37 or seek any other means to bring a discovery issue to the Court's attention. In short, the Court was left in the dark, and Plaintiff never sought the Court's assistance with a problem that could have been promptly eliminated.  Plaintiff's attempt to raise discovery matters for the first time in her opposition brief ([ECF No. 53] at 4-6), after jurisdictional discovery has closed, violates our district's local rules and will be disregarded in the Court's substantive jurisdictional analysis. Cooley v. Lamar Cnty. Sheriff's Dep't, No. 2:20-CV-196-TBM-MTP, 2024 WL 2148743, at *1-2 (S.D. Miss. Apr. 15, 2024) (district courts in Mississippi routinely deny discovery motions filed in violation of Local Rule 7(b)(2)(C); discovery motion filed two weeks after discovery deadline expired was fundamentally flawed

17

and would be denied); Kermode v. Univ. of Mississippi Med. Ctr., No. 3:09-CV-584-DPJ-FKB, 2011 WL 2619096, at *2 (S.D. Miss. July 1, 2011) (where party raised alleged discovery violation for the first time in a Motion for Default Judgment filed after the close of discovery, motion would be denied).

(c).  Home State Exception Ruling.

Having already afforded the parties the opportunity to conduct jurisdictional discovery [ECF No. 31] and having studied all the record evidence, the Court finds that this case was brought against a small Mississippi accounting firm with the primary claim in the two-count Amended Complaint being common law negligence (Count I), which would be decided under Mississippi substantive law.  [ECF No. 21] ¶¶ 86-115; Audler v. CBC Innovis Inc., 519 F.3d 239, 248 (5th Cir. 2008) (because CAFA is based on diversity jurisdiction, state substantive law governs under Erie doctrine).  Plaintiff states that Defendant is a Mississippi citizen because it is a Mississippi limited liability company with its principal place of business in McComb, Mississippi.  [ECF No. 21] ¶¶ 18, 22.  Plaintiff further states that Defendant conducts substantial business in Mississippi and in the Southern District of Mississippi.  Id. ¶¶ 18, 23.  In the Court's view, the focus here is local, and Mississippi interests predominate.

Defendant has presented evidence that, at the time the case was filed in August 2023, sixty-nine percent (69%) of the potential class members resided in Mississippi based on mailing addresses, which were derived from tax and employment records and then updated through the National Change of Address database.  This is prima facie evidence of domicile.  The evidence from three consecutive years of United States Census Bureau data shows a statistical tendency for Mississippi residents to continue to reside in the State over a period of years and supports a presumption of continuing domicile. Nothing on this record refutes the Census Bureau statistics, offers a statistical interpretation contrary to that submitted by Defendant, or indicates an intent on the part of any Mississippi potential class member to change domicile. Considering that courts have presumed continuing domicile even when parties leave fully destroyed homes without an indication of their intent to return, it makes sense to this Court that the presumption is even stronger on the facts of this case where there has been no mass relocation that could affect the putative class member composition.  Because Plaintiff has not come forward with rebuttal evidence, the presumption of continuing domicile stands.  E.g., Dozier v. GoAuto Ins. Co., No. 6:19-CV-01223, 2022 WL 1226918, at *8 (W.D. La. Apr. 26, 2022) (litigant was entitled to rely on the continuing domicile presumption

because opposing party did not come forward with evidence to rebut that presumption).

The Fifth Circuit instructs that CAFA "[j]urisdictional determinations 'should be made largely on the basis of readily available information.'" Hollinger, 654 F.3d at 570 (quoting S. REP. NO. 109-14, at 44, 2005 U.S.C.C.A.N. 3, 38).  The Fifth Circuit further cautions that "the evidentiary standard for establishing the domicile of more than one hundred plaintiffs must be based on practicality and reasonableness." Preston II, 485 F.3d at 816.  A court may make common-sense presumptions to determine whether the evidence establishes the citizenship of the parties, but it cannot rely on guesswork in the absence of evidence. Hollinger, 654 F.3d at 573; accord Evans v. Enter. Prods. Partners, LP, 426 F. Supp. 3d 397, 404 (S.D. Tex. 2019). CAFA's legislative history explains that, for cases in which two-thirds or more of the members of the plaintiff class and the primary defendants are citizens of the state in which the suit was filed, federal jurisdiction will not be extended because virtually all parties in such cases would be local, and local interests presumably would predominate.  S. REP. 109-14, 36, 2005 U.S.C.C.A.N. 3, 35.  With these principles in mind, the Court concludes that Defendant has carried its burden of jurisdictional proof by a preponderance of the evidence presented, and the home state exception to CAFA applies in this

20

case.  See Dixon v. D.R. Horton, Inc. - Gulf Coast, 695 F. Supp.
3d 739, 748 (M.D. La. 2023), aff'd, No. 23-30800, 2024 WL 125730
(5th Cir. Jan. 11, 2024), and appeal dismissed, No. 23-30714,
2024 WL 1508836 (5th Cir. Jan. 17, 2024) ("In sum, judicial
experience, common sense, the available evidence, and the
unrebutted presumptions coalesce, and the Court finds that
Plaintiffs have carried their burden to show that greater than
two-thirds of the members of the proposed class are Louisiana
citizens.").

CONCLUSION

Plaintiff cites no independent source of subject-matter
jurisdiction to support her demand for declaratory and injunctive
relief in Count II of the Amended Complaint. [ECF No. 21] ¶¶ 116-
124]; [ECF No. 53] at 9.  She thereby concedes that, like her
claim for negligence in Count I, subject-matter jurisdiction over
Count II is dependent upon the Court's ruling on the home state
exception to CAFA jurisdiction.  [ECF No. 53] at 9.  Having
decided that CAFA's home state exception applies in this case,
the Court must abstain from exercising jurisdiction over all
claims in the Amended Complaint.  Accordingly,

IT IS HEREBY ORDERED that Defendant's Renewed Motion to
Dismiss For Lack of Subject Matter Jurisdiction [ECF No. 47] is
**GRANTED**;

IT IS FURTHER ORDERED that this action is **DISMISSED** without prejudice under Federal Rule of Civil Procedure 12(h)(3).

A Final Judgment shall be entered of even date herewith pursuant to Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED, this the 14th day of March 2025.


                        /s/ David Bramlette
                    UNITED STATES DISTRICT JUDGE